**James B. MORRIS, Plaintiff–Appellant,**

v.

**Donald B. RICE, Secretary of Air Force, Defendant–Appellee.**

No. 92–1316.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 27, 1992.

Decided Jan. 29, 1993.

Edward Harold Passman, Passman & Kaplan, P.C., Washington, DC, argued, for plaintiff-appellant.

Maury S. Epner, Asst. U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., on brief), for defendant-appellee.

Before NIEMEYER and HAMILTON, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

We are presented with the novel procedural question of whether a district court, conducting a *de novo* review of the remedy portion of an Equal Employment Opportunity Commission (EEOC) decision in a race discrimination case, is bound by factual findings of the EEOC that support its finding of liability or, stated otherwise, whether the court may reconsider EEOC-found facts insofar as they relate to the remedy issues. The question is significant to a plaintiff who is a federal employee or federal job applicant because an EEOC finding of discrimination is binding on a federal agency, and the plaintiff may seek a limited review of the EEOC's remedy without risking a *de novo* review of its finding of liability. In this case the district court, presented with a fact found by the EEOC to support its finding of discrimination, reconsidered and found the fact differently in reviewing *de novo* the appropriate remedy. The court did so, however, without disturbing the EEOC's discrimination finding, which remained supported by the facts. Because we conclude that the district court's reconsideration of facts relevant to the appropriate remedy was proper on a review *de novo* and that the district court's factual findings were not clearly erroneous, we affirm.

## I

In January 1987, James B. Morris, a black male who was employed as an electronics technician by Westinghouse Electric Corporation in Linthicum, Maryland, applied for an open position with the United States Air Force office, located at the Westinghouse facility, as a Quality Assurance Specialist (Electronics), GS–9. The Air Force selecting official, George Rinard, considered eight applicants drawn from three separate lists that had been obtained by an Air Force personnel employee, Bar-

bara Miller. One of these lists, a "Certificate of Eligibles" issued by the United States Office of Personnel Management (OPM), contained the names of Morris, who had been evaluated under a numerical rating system as a "93," and Connie Taylor, a white female, who had a rating of "96." Before Rinard conducted any interviews, he considered candidates from the OPM list and offered Taylor the position, but she declined it. Rinard then interviewed Morris and the other candidates between April 23 and 28, 1987, and gave them his own ratings. One white male was given a "9," and another an "8" (on a scale of 10); the only other black applicant, Gregory Gills, was given a "7." Morris was given a "3." On April 29, offers were made to the two white male applicants, both of whom declined. Rinard did not extend any further offers. Rather, the position was downgraded to an internship at the GS–5 level and eventually filled by hiring a white female.

Morris filed a complaint with the EEOC, charging racial discrimination under Title VII of the Civil Rights Act of 1964, (codified as amended in 42 U.S.C. § 2000e, *et seq.*), and seeking appointment to the position, with back pay and intervening promotions. Following a hearing, the EEOC Administrative Law Judge (ALJ) found that the Air Force had racially discriminated against Morris, but concluded that he was not entitled to instatement and back pay. The ALJ found by clear and convincing evidence that Gills, the other black candidate, was more qualified and that he, not Morris, would have been appointed to the position had there been no discrimination. Accordingly, Morris was awarded only costs and attorney's fees. *See* 42 U.S.C. § 2000e–5(g)(2) (precluding instatement for an individual refused employment for a reason other than discrimination, and made applicable to the armed forces through § 2000e–16(d)); *see also Patterson v. Greenwood School Dist.*, 696 F.2d 293, 295 (4th Cir.1982) (denying retroactive promotion where plaintiff was victim of discrimination, but other more qualified candidates for same promotion were also discriminated against).

The ALJ based her finding of discrimination primarily on an inconsistent application

of the subjective qualifications and criteria used in the selection process. However, one factual finding supporting the conclusion of discrimination involved the date that the OPM list of eligible candidates was returned. This "Certificate of Eligibles" had to be returned to the OPM once a decision was made as to a listed applicant. The ALJ found that this list had been returned on April 27, two days before the offers were made to the two white male candidates. The return of the list meant a decision not to offer Morris the position had already been made and exposed as pretextual one of the Air Force's contentions—that Morris would have been considered further if the position had not been transformed into an internship.

The ALJ's decision was adopted *in toto* by the Appellate Review Division of the Air Force Civilian Appellate Review Agency, and in turn was affirmed by the Office of Review and Appeals of the EEOC.

Dissatisfied with the remedy, Morris filed suit in the district court. On his motion for summary judgment, requesting that the determination of racial discrimination be affirmed and the denial of instatement and back pay be reversed, the district court entered summary judgment in favor of Morris on liability, but refused to do so on the remedy, finding there to be genuine issues of material fact. One of these was when the "Certificate of Eligibles" was returned to the OPM. The district court proceeded to try *de novo* the remedy issues and, over Morris' objection, considered anew when the OPM list was returned, despite the EEOC determination that it was on April 27. The date was important to the remedy issue in the context of Morris' argument that, although concededly more qualified, Gills still would not have been the one selected for the position absent discrimination. Rather, Morris argued, because Rinard would have to decide about Morris before returning the list and the list was arguably returned on April 27 before Gills was interviewed, Rinard would have selected Morris, the next most qualified on

the OPM list, without interviewing Gills. The district court, however, found that the "Certificate of Eligibles" was not returned on April 27, as found by the EEOC, but on or about May 4, after all the candidates were interviewed, and it denied an award of instatement or back pay. This appeal followed.

## II

Morris contends that the district court erred in reconsidering a fact already found by the EEOC, that the OPM list of eligible candidates was returned to the OPM on April 27, 1987. Although this fact was not critical to the EEOC's finding of discrimination, it was important to the district court's finding that Morris should not be instated with back pay. To determine whether the court's review of the date of the list's return was proper, we must take into consideration the context in which the question arises.

 The role of the EEOC in cases involving federal employees is different from its role in cases involving employees from the private sector. When Congress amended the Civil Rights Act in 1972 to include a cause of action for federal employees and applicants who were victims of discrimination, it provided that final decisions of the EEOC were to be binding on federal agencies. *See* Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103 (1972) (codified as amended at 42 U.S.C. § 2000e–16) [*]; *Moore v. Devine*, 780 F.2d 1559, 1562–63 (11th Cir.1986) (unless timely challenged, findings of the EEOC in federal employee cases are binding on the agency). On the other hand, the federal employee or applicant may file a civil action in court seeking *de novo* review. *See* 42 U.S.C. §§ 2000e–5, 2000e–16(c); *see Chandler v. Roudebush*, 425 U.S. 840, 861, 96 S.Ct. 1949, 1959–60, 48 L.Ed.2d 416 (1976). Furthermore, the plaintiff may limit and tailor his request for *de novo* review, raising questions about the remedy without exposing himself to a *de novo* review of a finding of discrimination. *See Pecker v. Heckler*, 801 F.2d 709, 711 n. 3 (4th Cir.

---

[*] Originally, the Civil Service Commission was vested with the task of administering the Equal

1986); *see also Haskins v. United States Dept. of Army*, 808 F.2d 1192, 1199 & n. 4 (6th Cir.) (a federal employee may seek enforcement of an EEOC decision without risking a *de novo* review), *cert. denied* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987); *Moore*, 780 F.2d at 1562 (the agency is bound).

▪ In this case Morris, satisfied with the EEOC's finding of racial discrimination, sought *de novo* review only of the agency's remedy. The issue, therefore, is not whether the district court erred in considering the question of remedy *de novo*, but whether it erred in considering *de novo* a question of fact relevant to remedy which had also been considered and determined by the agency in the context of discrimination. In short, does reconsideration of such a "dual function" fact improperly reopen the discrimination question?

We conclude that the district court acted properly and within the scope of its review in reconsidering the date that the OPM list of candidates was returned. Morris requested a *de novo* review of the issue of remedy, seeking a reversal of the determination that back pay and instatement were not appropriate. In order to conduct thoroughly the review that Morris requested, the court had to be able to consider *de novo* the facts relevant to the remedy issue. As was the case here, a fact may come up in the context of discrimination, but present itself in a different light or take on greater importance in the context of remedy. It does no violence to the goals of Title VII or to any established principle of law to permit the court to review the relevant evidence and find again a fact that had already been found, even if inconsistent with the earlier finding made in a different context. This is particularly so because the review is conducted at the request of the employee or applicant. At the same time, however, the court may not extend reconsideration of facts related to the remedy so far that it does, in effect, undertake a review of liability.

Here, the date that the "Certificate of Eligibles" was returned to the OPM was one factor among many considered by the ALJ in finding discrimination, its primary importance being to rebut as pretextual the Air Force's claim that Morris would have been considered further had the open position not been downgraded. Even after finding that April 27 was the date of return, the ALJ nevertheless concluded that Morris was not entitled to instatement and back pay. In contrast, the date of return was particularly relevant to the remedy because of Morris' argument that he would have been hired before Gills was considered. Reconsideration of the date allowed the district court to conduct a full review of the record and make a *de novo* assessment of the appropriate remedy. By reconsidering that fact in the remedy context and making a different finding, the district court did no disservice to the EEOC's finding of discrimination, and it did not thereby reopen *sub silentio* the issue of discriminatory practices.

▪ Nor was the court's finding that the date of the OPM list's return was May 4, instead of April 27, clearly erroneous. In the evidence before the court was the OPM list itself which indicates that April 27, 1987, was the return date. However, that date is typed over "white-out," which covers some other undiscernible date. Also in the record is a letter from the OPM, dated May 5, 1987, stating that the list's return was overdue. Finally, the district court credited the testimony of Barbara Miller, the Air Force personnel specialist, who obtained and returned the OPM list and who testified that the certificate was returned on or about May 4, despite her earlier testimony before the ALJ that the certificate had been returned on April 27. The district court considered the evidence carefully and made factual findings in accordance with its resolution of the credibility questions. We find no error.

Employment Opportunity Act. In 1978, however, jurisdiction over functions related to equal opportunity in federal employment was transferred to the Equal Opportunity Commission pursuant to Reorganization Plan No. 1 of 1978, *reprinted in* 5 U.S.C.A. app. at 149 (Supp.1992), *and in* 92 Stat. 3781 (1978).

## III

Finally, Morris contends that the district court's finding that the Air Force had shown by clear and convincing evidence that Morris would not have been hired was clearly erroneous. Morris argues that Rinard, the selecting official, failed to treat all candidates equally when he first made an offer to Taylor, a white female, and then to two white males the day after their interviews. Had he also been made an offer the day after his interview, Morris contends, Gills, the more qualified black candidate, would never have been considered.

The district court concluded that any claim that Morris would have been made an offer before the last interviews was "no more than speculation." Rather, it found that once Taylor turned the position down, Rinard determined to interview all candidates and to make no further offers until he had spoken with all, including Gills. While Morris is correct that the two offers made to the white males were extended the day after their interviews, he fails to note as well that they were made the day after all interviews were completed. Also before the court was evidence that Gills then held the same position with the Air Force in Tucson, that he was from Norfolk, and that he wanted to return east. Finally, the court relied on its finding that the "Certificate of Eligibles" was returned to the OPM on May 4, after the interviews had been completed and the final decision made. The determination that Morris would not have been awarded the position is not clearly erroneous.

## IV

For the reasons set forth, we decide that the district court acted properly in reconsidering facts found by the EEOC to support its findings in connection with the court's *de novo* review of the remedy and that the district court's findings are not clearly erroneous. The judgment of the district court is therefore affirmed.

AFFIRMED.